**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hannah Bagnell,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-22-00116-TUC-MSA<br><br>**ORDER** |

  Plaintiff Hannah Bagnell seeks judicial review of an unfavorable decision issued by the Commissioner of Social Security Administration. The matter has been fully briefed. For the following reasons, the Commissioner's decision will be reversed, and this matter will be remanded for further proceedings.

## Background

**I. Procedural History**

  In 2019, Plaintiff filed applications for disability insurance benefits and supplemental security income. (AR 231, 234.) The applications were denied initially and on reconsideration. (AR 52–53, 85–86.) Plaintiff requested a hearing before an administrative law judge (ALJ), and a hearing was held in February 2021. (AR 29–51, 165.) After the hearing, the ALJ issued a written decision denying Plaintiff's applications. (AR 11–20.) The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (AR 1–3.) This lawsuit followed.

. . . .

## II.     Plaintiff's Personal and Medical History

Plaintiff is 50 years old. (*See* AR 231.) She graduated from high school and attended college for two years. (AR 268, 402.) She previously worked as a cook, thrift store manager, and cashier. (AR 290.)

Plaintiff alleges that she is disabled because of posttraumatic stress disorder, bipolar disorder, depression, anxiety, and migraines. (AR 267.) She says that her migraines are severe and occur twice per day almost every day, and that she is incapable of doing any activity during a migraine. (AR 283–84, 310–11.) She says that her depression decreases her motivation to dress, bathe, and feed herself. (AR 276.) She also says that her mental disorders affect her memory and ability to concentrate. (AR 279.)

## III.    The ALJ's Decision

The ALJ followed the five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.[1] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (AR 13.) At step two, the ALJ found that Plaintiff had four severe impairments: depressive disorder, anxiety disorder, posttraumatic stress disorder, and bipolar disorder. (AR 13.) The ALJ found that Plaintiff's migraines were not medically determinable and thus not severe. (AR 14.) At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of a listed impairment. (AR 14.) Between steps three and four, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work with certain non-exertional limitations. (AR 16.) At step four, the ALJ found that Plaintiff could not perform her past relevant work. (AR 18.) At step five, the ALJ found that Plaintiff could adjust to other work in the national economy. (AR 19.) The ALJ therefore concluded that Plaintiff was not disabled. (AR 20.)

. . . .

---

[1] The regulations for disability insurance benefits are similar in substance to those for supplemental security income. For ease of reference, further citations will be only to the former.

**Legal Standard**

The Commissioner's decision will be affirmed if it is supported by substantial evidence and free of legal error. *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996)). "Substantial evidence . . . is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (alteration in original) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

**Discussion**

**I.   Evaluation of Plaintiff's Migraines**

Plaintiff argues that the ALJ erred in evaluating her migraines at step two. The Court agrees.

At step two, the ALJ must first determine whether the claimant has a "medically determinable" impairment. 20 C.F.R. § 404.1521. An impairment is medically determinable if it is "established by objective medical evidence from an acceptable medical source." *Id.* If the claimant has such an impairment, the ALJ must then determine whether the impairment is "severe." *Id.* "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1522(a). A claimant passes step two if he has at least one severe medically determinable impairment. *Id.* § 404.1520(a)(4)(ii). Importantly, in formulating the residual functional capacity (between steps three and four), the ALJ must consider all of the claimant's medically determinable impairments, even ones that are not severe. *Id.* § 404.1545(a)(2).

Here, the ALJ found that Plaintiff's migraines were not medically determinable. (AR 14.) That finding stems from a misapplication of Social Security Ruling 19-4p and is not supported by substantial evidence. The ruling provides that a diagnosis or a statement of symptoms does not, standing alone, establish that the claimant has a medically determinable headache disorder. SSR 19-4p, 2019 WL 4169635, at *6 (Aug. 26, 2019). In determining whether the claimant has such a disorder, the ALJ must "consider the

following combination of findings reported by an [acceptable medical source]": (1) a "primary headache disorder diagnosis" made "after excluding alternative medical and psychiatric causes of the person's symptoms"; (2) an "observation of a typical headache event, and a detailed description of the event" by an acceptable medical source or a third party; (3) "[r]emarkable or unremarkable findings on laboratory tests"; and (4) the claimant's "[r]esponse to treatment," including whether an acceptable medical source "documents ongoing headaches that persist despite treatment." *Id.*

The ruling's phrasing ("we will consider") indicates that the listed items are considerations (factors). In this case, however, the ALJ treated the second consideration as a requirement:

> With regard to headaches as a primary disorder, SSR 19-4p, "question 7," instructs how to establish a medically determinable impairment (MDI) of a primary headache disorder. Specifically, we will not establish the existence of an MDI based only on a diagnosis or a statement of symptoms; either a direct observation by an acceptable medical source (AMS) and documented by that AMS or a third-party observation of a typical headache event that is documented by an AMS and is consistent with the evidence in the case file. The AMS may observe and document signs that co-occur prior to, during, or following the headache event. In the claimant's case, the record does not include documentation by an AMS of an observation or third-party account of a migraine event or signs occurring prior to or following the event. In appointments during which the claimant sought treatment for her migraines, she was presented with normal appearance and behavior and in no acute distress.

(AR 14 (citation omitted).)

The ALJ apparently believed that the absence of the second consideration was fatal, because the ALJ did not even mention the first, third, and fourth considerations. This omission was harmful error. The other considerations arguably support a finding that Plaintiff's migraines are medically determinable: (1) Plaintiff was diagnosed with chronic migraines without aura, a primary headache disorder. (*See* AR 389, 507.) The treatment records indicate that Plaintiff's providers were aware of her medical history and other conditions when the diagnosis was made, which suggests that the other conditions were excluded as a cause. (*See* AR 388–89.) (3) In August 2019, an MRI showed that Plaintiff's

brain was mostly unremarkable. (AR 357.) "[A]n unremarkable MRI is consistent with a primary headache disorder diagnosis." SSR 19-4p, 2019 WL 4169635, at *4. In December 2019, an EEG was also unremarkable. (AR 413.) (4) The treatment records indicate that Plaintiff tried at least five different treatments for migraines, and that none of them provided sustained relief. (*See* AR 378 (noting Propranolol was ineffective); AR 382 (noting Topiramate was ineffective); AR 388 (noting Depakote and Effexor were ineffective); AR 528 (noting Botox injections were ineffective).) "When evidence in the file from an AMS documents ongoing headaches that persist despite treatment, such findings may constitute medical signs that help to establish the presence of an MDI." SSR 19-4p, 2019 WL 4169635, at *6.

As previously noted, in determining the residual functional capacity, the ALJ must consider impairments that are medically determinable. 20 C.F.R. § 404.1545(a)(2). Here, because Plaintiff's migraines were not medically determinable, the ALJ did not consider them when determining Plaintiff's residual functional capacity. (AR 17 ("After careful consideration of the evidence, the undersigned [ALJ] finds that the claimant's *medically determinable* impairments could reasonably be expected to cause the alleged symptoms." (emphasis added).) Thus, the ALJ's step-two error permeated the rest of the ALJ's decision. Given Plaintiff's testimony that her migraines caused disabling symptoms, the ALJ's failure to consider those symptoms was harmful error.

The Commissioner argues that any error at step two was harmless because that step was resolved in Plaintiff's favor, and the ALJ "discussed" Plaintiff's migraines later in the analysis. While those conditions, together, would make a step-two error harmless, *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017), the second condition is not satisfied in this case. The alleged "discussion" referenced by the Commissioner is not a discussion at all; it is a single-sentence summary of Plaintiff's testimony. (AR 17 ("The claimant alleged migraines make it difficult to do any activities.").) Plaintiff's migraines are not mentioned in the analysis following the summary. The analysis relates entirely to Plaintiff's medically determinable mental disorders and testimony that such disorders affect her memory and

ability to concentrate. (*See* AR 16 (summarizing Plaintiff's testimony that her mental disorders "make it difficult to concentrate on tasks"); AR 17 (stating "[t]he record confirms the claimant has depressive disorder, bipolar disorder, (PTSD), and anxiety disorder," and then discussing Plaintiff's ability to concentrate in relation to her "mental status" and "high anxiety").) As such, the Court disagrees that the error was harmless.

## II. Evaluation of the Medical-Opinion Evidence

Plaintiff argues that the ALJ erred by not incorporating the opinions of Dr. Noelle Rohen, a psychologist, into the residual functional capacity. The Court agrees.

The ALJ found Dr. Rohen's opinions persuasive because they were supported by her examination of Plaintiff and were consistent with the record as a whole. (AR 18.) Among those opinions was that "difficulty with persistence" would be Plaintiff's "main impediment" to employment. (AR 403.) Dr. Rohen also opined that "[c]rying and appearing anxious . . . could be an issue" for Plaintiff. (AR 404.) As to the residual functional capacity, the ALJ found that Plaintiff was able to maintain "concentration for approximately 2 hour blocks" and "able to work consistently and at a reasonable pace for approximately 2 hour segments between arrival, first break, lunch, second break, and departure." (AR 16.)

As Plaintiff correctly notes, the ALJ's finding does not reflect a limited ability to concentrate and persist. The agency's Program Operations Manual System (POMS) provides that the "mental abilities needed for any job" include "[t]he ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)" and "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." POMS DI 25020.010(b)(2).[2]

The ALJ was persuaded by Dr. Rohen's opinion that Plaintiff would have

---

[2] The POMS are "the publicly available operating instructions for processing Social Security claims." *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003). "While these administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect." *Id.*

"significant limitations" in concentration and persistence (AR 18), but the residual functional capacity reflects that Plaintiff can concentrate and persist for "extended periods." Given this inconsistency, substantial evidence does not support the ALJ's finding. And because it is unclear whether Plaintiff's limitations affect her ability to perform the jobs identified by the vocational expert, the Court cannot conclude that the error was harmless.

According to the Commissioner, the residual functional capacity does not need to be an identical match to the medical-opinion evidence; rather, it need only be "consistent" with the evidence. The Commissioner argues that standard was satisfied in this case. The Court disagrees. The Commissioner is correct that an exact match is not required, but there must still be a logical relationship between the evidence and the ALJ's findings. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (limiting the claimant to "no public contact" was "consistent" with his doctor's opinion that he had "marked limitations in social functioning"). The ALJ's finding that Plaintiff can concentrate and persist for extended periods of time is not consistent with "Dr. Rohen's opinions that [Plaintiff] would experience significant limitations" in those areas of mental functioning. (AR 18.)

### Conclusion

The ALJ erred in evaluating Plaintiff's migraine condition and in formulating the residual functional capacity.[3] Plaintiff does not request an immediate award of benefits, and the Court finds that remand for further proceedings is appropriate in any event. Accordingly,

**IT IS ORDERED** that the Commissioner's decision is **reversed**. This matter is **remanded** back to the agency for a new hearing and decision. The Clerk of Court is directed to enter judgment accordingly and close this case.

Dated this 13th day of April, 2023.

_____
Honorable Maria S. Aguilera
United States Magistrate Judge

---

[3] Plaintiff also argues that the ALJ erred in rejecting her symptom testimony. Because remand is appropriate for two other reasons, the Court declines to reach that issue.

- 7 -